**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARLOS ARIEL RODRÍGUEZ, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL NO.: 20-1148 (MEL) |

**OPINION AND ORDER**

**I.     Procedural and Factual Background**

Pending before the court is Mr. Carlos Ariel Rodríguez's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 27. On May 7, 2015, Plaintiff filed an application for Social Security benefits alleging that he became unable to work due to disability on February 14, 2012 ("the onset date"). Tr. 34. Prior to the onset date, Plaintiff worked as a "fitter helper." Tr. 44, 63. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. Tr. 36. Plaintiff's disability claim was denied on October 9, 2015 and upon reconsideration. Tr. 34

Thereafter, Plaintiff requested a hearing which was held on November 16, 2017 before Administrative Law Judge Shirley Ann Marzan ("the ALJ"). Tr. 34, 46, 48. On January 24, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 46. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to

judicial review. Tr. 4-6. Plaintiff filed a complaint on March 13, 2020. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 24, 27.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. Tr. 36. Then, at step one of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the severe impairments of spine disorders and affective disorders. Tr. 37. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 37. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). The claimant was able to lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour workday; stand and walk for four hours, each activity, in an eight-hour workday; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch and crawl; and never be exposed to unprotected heights. Mentally, the claimant was able to perform simple, routine tasks; make simple work-related decisions; frequently interact and respond appropriately to supervisors, coworkers and the public; and adapt to changes in the work setting.[1]

Tr. 38. At step four, the ALJ determined that Plaintiff could not perform his past relevant work as a fitter helper. Tr. 44. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. Tr. 45, 63-66. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: parking lot cashier, officer helper, and ticket taker. Tr. 45, 64. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 46.

## III. Legal Analysis

Plaintiff objects to the ALJ's decision denying disability benefits by arguing that the RFC determination is not supported by substantial evidence. ECF No. 24, at 9. Plaintiff specifically

---

[1] The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See Social Security Ruling ("SSR") 83–10, 1983 WL 31251, at *6.

argues that the ALJ should have consulted a medical expert and failed to account for the side effects of medication. Plaintiff also claims that the ALJ did not abide by the treating physician rule in assigning weight to medical opinions. Lastly, it is also argued by Plaintiff that the ALJ did not properly consider his subjective complaints of pain.

### A. The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination that he could perform a reduced range of light work is not supported by substantial evidence. ECF No. 24, at 9-12. The ALJ is responsible for determining a claimant's RFC based on all the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

The ALJ reasonably considered the medical evidence in the record in determining that Plaintiff could perform a reduced range of light work. At the hearing, Plaintiff testified that he stopped working because he fell and could not handle the back pain. Tr. 54. The ALJ noted that treating physical therapist Dr. Edna Ortiz Lozano ("Dr. Ortiz") evaluated Plaintiff in May 2012 and observed moderate muscle spasms and decreased lumbar range of motion. Tr. 40, 113, 115. However, Dr. Ortiz also found that Plaintiff had normal muscle tone with no atrophy. Tr. 113. On June 25, 2012, examining radiologist Dr. Francisco Loubriel ("Dr. Loubriel") evaluated an MRI of Plaintiff's lumbosacral spine and found a straightening of the lumbar spine related to muscular spasm and a disc protrusion into the spinal canal at L4-L5, abutting the nerve root. Tr. 39, 405. However, Dr. Loubriel opined that there was no associated spinal canal or neural

foraminal stenosis. Tr. 39, 405. In July 2012, an electromyography ("EMG") test of the lower extremities was positive for bilateral L5 and S1 radiculopathy. Tr. 418. In December 2012, treating pain management specialist Dr. Alejandro Porrata Nieva ("Dr. Porrata") examined Plaintiff and opined that the straight leg raising test ("SLR test") was negative and no trigger points were observed. Tr. 97.

In August 2014, treating physiatrist Dr. Ingrid Méndez ("Dr. Méndez") opined that a Nerve Conduction Velocity ("NCV") test of the lower extremities evidenced bilateral lumbar radiculopathy. Tr. 103. The ALJ noted in August 2014, examining neuroradiologist Dr. Emilio Torres Reyes evaluated a second MRI of the lumbar spine and found that there was degenerative arthritic changes and  degenerative disc disease with disc herniation. Tr. 40, 415.

On September 12, 2015, Plaintiff was evaluated by examining neurologist Dr. David Blas Boria ("Dr. Blas")  who diagnosed him with chronic thoracic and lumbar musculoskeletal pain with associated muscle spasm. Tr. 439. Dr. Blas found that Plaintiff could handle and lift common objects, stand over heels and toes, and that he could sit, stand, and walk with a normal gait. Tr. 438-39. Dr. Blas opined that SLR and Lasegue tests were normal and found that Plaintiff exhibited normal strength, except for slightly decreased strength (4+/5) in plantar flexion and dorsiflexion, foot inversion and eversion, and extensor hallucis longus. Tr. 438.

On October 8, 2015, state agency consultant general practitioner Dr. Brenda Concepción ("Dr. Concepción") reviewed the record evidence and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. Tr. 242. Dr. Concepción also opined that Plaintiff could sit for about 6 hours and also stand and walk for about 6 hours in an 8-hour workday. Tr. 242. It was also opined by Dr. Concepción that Plaintiff had no restrictions for climbing stairs, ladders, balancing, kneeling, and crawling but that he could only crouch and

stoop frequently. Tr. 243. On October 29, 2015, state agency consultant general practitioner Dr. José González Méndez reviewed the record evidence on reconsideration and concurred with the findings of Dr. Concepción. Tr. 254. The ALJ reasonably assigned partial weight to the opinions of Dr. Concepción and Dr. González in view that they did not evaluate evidence submitted at the hearing level and the objective evidence supported more limitations. Tr. 43.

The ALJ also considered evidence after Plaintiff's last date insured on September 30, 2015. The ALJ noted that treating physical medicine & rehabilitation specialist Dr. Florencio Lao Sam ("Dr. Lao") prescribed Plaintiff the medications Tramadol, Percocet, and Neurontin in October and November 2015 and also recommended a home program of local heat and back therapeutic exercises. Tr. 41, 556-57, 561. In November 2015, treating neurosurgeon Hiram Mercado ("Dr. Mercado") examined Plaintiff and diagnosed him with lumbar pain syndrome. Tr. 136. Dr. Mercado opined that Plaintiff had decreased deep tendon reflexes. Id. However, Dr. Mercado observed that Plaintiff could walk without difficulties and had normal range of motion of the neck. Id. Dr. Mercado also found that Plaintiff had normal motor function, normal sensation, and that there was no evidence of radiculopathy. Id. In her decision, the ALJ noted that the record does not reflect evidence of nerve blocks. Tr. 41. Plaintiff has not cited to any record evidence rebutting the ALJ's assertion that there was no evidence of nerve blocks. At the hearing, Plaintiff testified that it was recommended he undergo surgery but that he did not want surgery because it was offered by SIF. Tr. 41, 54-55.

Plaintiff argues that the ALJ could not have appreciated the medical significance of the disc "abutting" the nerve root, shown in the MRI from June 25, 2012, without calling a medical expert. ECF No. 24, at 10. "[T]he decision whether to call a medical expert to testify at the hearing before the ALJ remains within the discretion of the ALJ, and the failure to do so may not

8

provide the basis for vacating the decision of the Commissioner." Clavijo-Miranda v. Comm'r of Soc. Sec., Civ. No. 11-1923, 2013 WL 135181, at *4 (D.P.R. Jan. 9, 2013) (citation omitted). While it is impermissible for the ALJ to interpret raw medical data, this is not the case here. See Manso–Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 19 (1st Cir. 1996). As the ALJ noted, the MRI from June 25, 2012 was reviewed by Dr. Loubriel. Tr. 39, 405. Moreover, this MRI was also reviewed by Dr. Mercado who assessed that it revealed a "small hernia L4-L5 and a very small, barely perceptible hernia at L5-S1 central." Tr. 136. Furthermore, both state agency consultants Dr. Concepción and Dr. González considered this MRI, alongside other evidence, when formulating their opinions. Tr. 241, 243, 251, 253. Accordingly, the ALJ did not err when she did not ask a medical expert to interpret the MRI dated June 25, 2012. See Rodríguez-Pagán, 819 F.2d 1 at 5 ("Use of a medical advisor in appropriate cases is a matter left to the [Commissioner's] discretion; nothing in the Act or regulations requires it.").

It is also argued by Plaintiff that the ALJ failed to consider the side effects of medication in formulating his RFC. ECF No. 24, at 10-11. Plaintiff argues that he is taking Neurontin and Percocet that may cause a variety of adverse side effects. Id. at 11. In her decision, the ALJ noted that Plaintiff had been prescribed Tramadol, Percocet, and Neurontin. Tr. 41. Furthermore, at the hearing, the ALJ specifically asked Plaintiff whether the medications he was taking caused any side effects to which Plaintiff responded "no." Tr. 55-56. The mere fact that a medication may cause side effects does not necessarily mean that Plaintiff himself suffered side effects from medication. Plaintiff has not cited to any record evidence rebutting his own testimony and the ALJ's finding that he did not have any side effects from medication.

Plaintiff also takes issue that the ALJ discredited the opinion of treating physician Dr. Lao. ECF No. 24, at 12. "[A]n ALJ should generally give more weight to a treating

9

physician's opinions, because such doctors 'are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s).'" Carstens v. Comm'r of Soc. Sec., Civ. No. 12-1335, 2013 WL 3245224, at *7 (D.P.R. June 26, 2013) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ, however, can give less weight to a treating physician's opinion with a showing of good cause: "(1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record." Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007).

In weighing the evidence, the ALJ properly gave little weight to Dr. Lao's opinion dated November 15, 2017 that Plaintiff is "totally and permanently disabled" as the issue of disability is a finding reserved solely to the Commissioner.[2] Tr. 43, 519. See 20 C.F.R. § 404.1527(d); Arroyo v. Sec. of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) (explaining that the ALJ "is not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability."). Furthermore, the ALJ reasonably determined that Dr. Lao's opinion that Plaintiff was "totally and permanently disabled" was inconsistent with the other record evidence. See Lozada-Miranda v. Comm'r of Soc. Sec., Civ. No. 18-1410, 2020 WL 4671838, at *6 (D.P.R. Aug. 11, 2020) ("the opinion of a treating physician need not be given controlling weight where the ALJ determines that it is inconsistent with the other substantial evidence in [the] case record.") (citing 20 C.F.R. § 404.1527(c)). Dr. Lao's opinion is contradicted by the opinion of Dr. Mercado who found that Plaintiff could walk without difficulties and had normal range of motion of the neck. Tr. 136. Dr. Mercado also found that Plaintiff's motor function and sensory

---

[2] Similarly, the ALJ reasonably assigned little weight to the opinions of doctors from the Industrial Commission ("IC") finding that Plaintiff was 25% disabled due to his back injury as the finding of disability is reserved to the Commissioner. Tr. 43, 129. See 20 C.F.R. § 404.1527(d).

10

examination was normal and that there was no evidence of radiculopathy. Id. Dr. Lao's opinion is also inconsistent with the opinion of Dr. Blas who found that Plaintiff was able to stand over heels and toes, his gait was normal, and that he could sit, stand, and walk. Tr. 438. Dr. Blas opined that SLR and Lasegue tests were normal, and that Plaintiff exhibited mostly normal strength. Tr. 438. Moreover, Dr. Lao's opinion is undermined by his conservative treatment for Plaintiff in the form of medication, home exercises, and rest, rather than more aggressive approaches like surgery, nerve blocks, or physical therapy. Tr. 41, 518-19. See Ramos-Rodríguez v. Comm'r of Soc. Sec., 91 F. Supp. 3d 232, 240 (D.P.R. 2015) ("The opinion of such a treating physician can be rejected . . . when it is not supported by the physician's own medical findings.").

Plaintiff argues that the ALJ improperly assigned great weight to Dr. Blas' opinion simply because he was a specialist. ECF No. 24, at 14. Plaintiff's contention cannot flourish. The ALJ properly noted in her decision that Dr. Blas's opinion that Plaintiff could sit, stand, walk, and travel was supported by Plaintiff's negative SLR tests, normal motor and sensory function, and normal gait. Tr. 43, 97, 438.

**B. Avery Factors**

Plaintiff claims that the ALJ did not properly consider his complaints of pain in arriving at the RFC determination. ECF No. 24, at 9. In evaluating a claimant's subjective complaints of pain, the ALJ must consider the Avery factors. See Vargas-López v. Comm'r of Soc. Sec., 510 F. Supp. 2d 174, 180 (D.P.R. 2007). The Avery factors include:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 28 (1st Cir. 1986); see Social Security Ruling 16-3P, 2017 WL 5180304, at *7-8. The ALJ, however, "need not slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding." Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (citations omitted).

      In the instant case, "[a]lthough the ALJ did not mechanically enumerate each factor, [her] opinion and the transcript of the hearing show a full consideration of the factors." González v. Comm'r of Soc. Sec., Civ. No. 14-1669, 2016 WL 1171511, at *3 (D.P.R. Mar. 24, 2016); see Mercado v. Comm'r of Soc. Sec., 767 F. Supp. 2d 278, 285 (D.P.R. 2010) ("Generally, a failure to address all of the Avery factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing."). Regarding the first factor, nature and location of alleged pain, Plaintiff testified that he has pain in his middle back. Tr. 54. The ALJ noted in her decision that Plaintiff testified that he ceased working in February 2012 because he fell and could not handle the back pain. Tr. 39, 58. The ALJ also noted that Plaintiff was diagnosed by Dr. Blas in September 2015 with chronic thoracic and lumbar musculoskeletal pain with associated muscle spasm and that Dr. Mercado diagnosed Plaintiff with lumbar pain syndrome in November 2015. Tr. 40, 41, 136, 439.

      With regard to the second factor, precipitating and aggravating factors, Plaintiff testified that he feels pain when he wakes up and gets out of bed. Tr. 54. Plaintiff also testified that he feels pain when he moves fast and tries to do household chores. Tr. 55-56. The ALJ considered the third factor concerning Plaintiff's pain medication as it was noted that Dr. Lao prescribed the medications Tramadol, Percocet, and Neurontin. Tr. 41. Plaintiff testified at the hearing that his medications do not cause him any side effects. Tr. 59, 62.

Regarding the fourth factor, treatment other than medication, the ALJ noted in her decision that Plaintiff's pain was not treated with nerve blocks or surgery. Tr. 41. Plaintiff has not cited to any record evidence contradicting the ALJ's finding that his back pain was not treated with nerve blocks or surgery. The ALJ also considered the fifth factor, functional limitations, as Plaintiff testified that he can only sit for 15 to 20 minutes, walk between 15 to 25 minutes, and pick up a gallon of milk. Tr. 57. However, Plaintiff testified that he cannot lift a box of water because it would hurt his back. Id. Plaintiff also testified he gets cramps in his legs. Tr. 57. The ALJ noted in her decision that Dr. Blas found that Plaintiff was able to lift and handle common objects, his gait was normal, and that he could sit, stand, and walk. Tr. 41, 438.

Regarding the sixth factor, activities of daily living, the ALJ noted that Plaintiff reported in his function report that he cannot do household chores. Tr. 41, 81. However, Plaintiff testified that he can take care of himself, bathe, and dress but that he does it slowly. Tr. 55-56. Plaintiff also testified that he is capable of driving. Tr. 57. Thus, contrary to Plaintiff's argument, the ALJ considered Plaintiff's complaints of pain and there is no reason to overturn the ALJ's RFC determination. See Mercado, 767 F. Supp. 2d at 285.

**IV.     Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of September, 2021.

s/Marcos E. López  
U.S. Magistrate Judge